ABERCROMBIE v. ABERCROMBIE.

1. A decree of settlement between distributees made by the ordinary will not be disturbed, after a lapse of nearly twenty years, and after payments and receipts thereunder.
2. And one of these distributees being a creditor, who neglected to present her debt at such accounting and settlement, and afterwards received a tract of land in part payment of the amount, ascertained to be due her as distributee under said decree, she cannot call upon the other distributees to contribute out of the sums so decreed to them, to the payment of a judgment by default, recovered by her against the administrator many years afterwards.
3. Under this judgment, the plaintiff might look to the administrator personally, and to the undistributed assets of the estate in his hands.
4. But the administrator having been charged with the sale-bill, the amounts due thereon became his property, subject to the equity of this creditor, to have them applied to her judgment. This equity, however, is subordinate to the equity of the distributees to have judgments against them, or against their husbands, applied to the decree in their favor. This principle was extended even to the setting off of a decree in favor of one distributee (the wife of A), against a judgment against the husband of another distributee, for whom A was surety.
5. The plaintiff had no right to require the other distributees to refund

for the purpose of paying her debt, and if so, she should be required to refund her proportionate part. A reference ordered for this purpose was, therefore, unnecessary, but no exceptions having been taken by the defendants, no ruling can be made upon this subject.

Before COTHRAN, J., Laurens, February, 1885.

The opinion fully states the case.

*Messrs. Geo. Westmoreland* and *F. P. McGowan,* for appellants.

*Messrs. Holmes & Simpson,* contra.

April 23, 1886.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   Jonathan Abercrombie departed this life in 1862, intestate, possessed of a considerable estate both real and personal. He left as his heirs at law four sons and eight daughters, viz: (1) Jonathan, (2) Elisha, (3) Alexander, (dead) and (4) John; (5) Elizabeth, who intermarried with one Adams, (6) Hannah, wife of Babb, (7) Christie, wife of Austin Moore (now dead), (8) Harriet, wife of Rowland, (9) Mary, wife of John Armstrong, (10) Jane Hellams, (11) Clarinda, wife of Henry P. Johnson, and (12) Susan Abercrombie. Jonathan Abercrombie, jr., administered upon the estate, and in December, 1862, sold the personal estate. At the sale some of the distributees purchased property and gave their notes, and in the case of daughters, their husbands bought. On April 16, 1864, a statement for a settlement of the estate was made in the then ordinary's office, wherein the administrator was charged with the sale bill, and credited with all payments returned, and after taking an account of advancements, the amount due to each of the children was ascertained, varying somewhat, but generally over $1,000. "Upon this accounting the ordinary rendered a decree directing the administrator to pay the several heirs the amounts found to be due them, in those cases where the advancements had not exceeded their shares; and that those of the heirs whose advancements had exceeded their share, should pay to the administrator the amount of such excess."

The lands of the estate consisted of three small tracts: No. 1 containing 170 acres, was valued at $8.20 per acre; No. 2, consisting of 114 acres, seems to have been sold; and No. 3, 70 acres, went in some way to John H. Abercrombie. Soon after this adjustment and decree in the ordinary's office, the administrator actually settled the amounts due to Elizabeth Adams, Jane Hellams, and Harriet Rowland, and to Hannah Babb, except a balance for which her husband gave his note with surety. Susan Abercrombie consented to take the No. 1 tract of land at the appraisement, $1,394, which was nearly her full share. This was done by the consent of all parties, as she had received very little by way of advancement or purchase at the sale. She has been in possession of the land since 1864, and the other distributees in possession of the property purchased by them since 1862. No formal settlement was made with some of the distributees, but it lay over probably for the reason that in the case of married women their husbands had purchased largely at the administrator's sale. The decrees in the ordinary's office in favor of the wives stood open, while the notes for purchases at the sale stood unpaid against the husbands. The administrator sued to judgment John Armstrong and his sureties, on the note given by him for purchases at the sale; and he also sued to judgment the sureties of Austin Moore, on the note given by the said Austin for purchases at the sale; and also Henry P. Johnson and his sureties for purchases at the sale.

Matters stood in this condition until 1881, when Susan Abercrombie recovered a judgment for $1,602.73 against Jonathan Abercrombie, as administrator, and immediately after instituted these proceedings against the administrator and all the distributees, praying for a final settlement of the estate, and as incidental thereto, that all the unadministered assets, including the aforesaid judgments, might be realized and applied to the judgment on the debt of the plaintiff, and the excess, if any, paid into court for future division among all the distributees.

Jonathan Abercombie, the administrator, did not answer, but some of the distributees did. John Armstrong and Mary, his wife, and the heirs of Austin Moore, deceased, claimed that the decrees in the ordinary's office against Jonathan Abercrombie, as

administrator, in favor respectively of Mary Armstrong and Christie Moore, should be set off against the aforesaid judgments, recovered respectively against their husbands and their sureties. And besides, John Armstrong exhibited a written assignment of his wife, Mary, transferring all her interest "in the estate of Jonathan Abercrombie, deceased, to the extent of the judgment against them (John Armstrong, Lewis Abercrombie, and Thomas A. Paden), and I hereby empower and authorize the said John Armstrong and Lewis Abercrombie to collect and receipt for so much of my said interest as will satisfy the said judgment." And the heirs of Christie Moore also executed a paper somewhat similar, giving John R. Hellams "power and authority to collect the decree in favor of the said Christie Moore, and to appropriate it to the payment of a judgment rendered against Austin Moore and John Hellams." These papers are in the brief. The defendants also insisted, if there was to be contribution among the distributees for the payment of the plaintiff's judgment, that all, including the said Susan herself, should contribute in proportion to the amount each received from the estate.

It was referred to the master, C. D. Barksdale, Esq., to state the account and decide the issues, who made a full and clear report. The cause came up on exceptions before Judge Cothran, who decreed: "That the judgment against John Hellams and Patilla F. Moore, as sureties of Austin Moore, is entitled to be credited with the amount reported as the interest of Christie Moore, by virtue of assignment; and that the judgment against John Armstrong and Lewis Abercrombie, and then the judgment against John Armstrong, as surety of H. P. Johnson, are entitled to be credited with the interest of Mary Armstrong, as ascertained in the master's original report; and that the remainder of the assets reported by the master be collected by him and applied to the payment of the debt and costs." He further directed, if the said assets were not sufficient to pay the said debt, that the master should inquire and report the amount which each distributee should contribute for the purpose of paying the remainder of plaintiff's debt.

From this decree the plaintiffs appeal on the grounds:

"First. It is submitted that his honor erred in decreeing 'that

the judgment of Jonathan Abercrombie, administrator, against John Hellams, deceased, and Patilla F. Moore, as sureties of Austin Moore, is entitled to be credited with the amounts reported as the interest of Christie Moore by virtue of assignment.' I. Because said instrument is invalid and of none effect. II. Because said instrument, if valid, cannot operate as an assignment. III. Because the heirs of Jonathan Abercrombie, deceased, have no interest in the estate until debts are paid. IV. Because the plaintiffs, Susan Abercrombie and Clarinda Johnson, are distributees of said estate, and according to the decree of the court are entitled to distributive shares in the surplus, and no provision is made for them after debts are paid. V. Because the instrument, if valid, is not intended to protect P. F. Moore, but is simply a power of attorney to collect and apply to judgment against John Hellams.

"Second. It is submitted that his honor erred in decreeing 'that the judgment against John Armstrong and Lewis Abercrombie should be credited with the interest of Mary Armstrong as ascertained in the master's original report.' I. Because Mary Armstrong would have no interest until the debts were paid. II. Because said judgments amount to more than her share in the estate after debts are paid, and no provision is made for meeting the interest to plaintiffs. III. Because said judgments had been satisfied by enforcement and the fund in court under a previous order of court.

"Third. It is submitted that his honor erred in decreeing that the judgment against John Armstrong as surety of H. P. Johnson was entitled to be credited with the interest of Mary Armstrong as ascertained in the master's original report. I. Because the instrument from Mary Armstrong to John Armstrong and Lewis Abercrombie does not authorize such credit. II. Because Mary Armstrong would have no interest in the estate until the debts were paid. III. Because, to allow such credit would be giving her an amount greater than the share of Mary Armstrong after paying the debts, and no provision is made to pay the interest of the other heirs at law as fixed by the decree."

There is a good deal of confusion in this case, arising principally from the fact that Susan Abercrombie claims in the double

4

capacity of distributee and creditor. She was before the Court of Ordinary in 1864, when the estate was settled, but did not then, as she ought to have done, present her demand and have it provided for before division. She did not appeal from the decree, but, on the contrary, assented to it and received her share. Other distributees also received their shares, and now, after a lapse of nearly twenty years, it is too late to disturb that settlement. All the parties are bound by it, and if the administrator has failed to pay any of the distributees the amounts decreed to them, they may pursue him on his bond, but they have no right to a readjustment and contribution among themselves.

But the contention is that Susan Abercrombie is more than a distributee, she is a creditor of the estate, and as creditors must be paid before distributees, that debt must now be paid. There is no doubt about the principle which Susan Abercrombie should have invoked in the settlement in the ordinary's office, but having failed to do so, there is much difficulty in its application to the peculiar, if not extraordinary, facts of this case. We must assume that Susan Abercrombie was a creditor of her father at the time of his death. It does not appear that she presented her demand in the ordinary's office, but it would seem stood by and allowed the estate to be divided without taking any account of her debt, and she received her share enlarged by that omission.

After long delay, nearly twenty years, she sued Jonathan Abercrombie, the administrator, and recovered judgment against him in 1881. Whether the administrator in that action pleaded *plene administravit* or not, the judgment as to him imports assets, and if he does not pay it, the judgment creditor may pursue him as for a *devastavit*. *Trimmier v. Thomson,* 19 *S. C.,* 247. It does not follow, however, that the judgment binds the distributees as to the shares already delivered or decreed to them. They were not made parties as heirs under the statute, calling upon them to contribute to the extent of assets received, to the payment of a subsequently discovered debt of the ancestor; and if such had been the character of the action, there could have been no recovery against them for the creditor, Susan Abercrombie, had notice of the former division and received her part under it. She could not hold under it herself, and at the same time disturb it

as to others, either as distributee or as creditor. Besides, the great lapse of time, which protects her in the possession of her land, also protects the others as to their shares. We do not understand that the complaint claims contribution, and as to the plaintiff's judgment, the question is not in the case. See *Gregory v. Rhoden,* 24 *S. C.,* 90 ; *Brewster & Dickson v. Gillison,* 10 *Rich. Eq.,* 435.

But under her judgment against the administrator it may be that Susan Abercrombie could ask for a final settlement and to have appropriated to her debt any remaining unadministered assets of the estate, in preference to having such assets divided among the distributees in a supplemental settlement. In this view, it is claimed that the judgments recovered by Jonathan Abercrombie upon notes for purchases at his sale, and standing in his name as administrator, are such general assets, and applicable as matter of right to her judgment. It does not strike us that these judgments are, in the proper sense of the word, assets of the estate. They were recovered on parts of the original sale bill which was accounted for by the administrator in the ordinary's settlement, and then became his property, subject to a strong equity that they would go to the distributees, whose decrees were, to a large extent, based on them. The liability of the administrator for these notes was changed into the form of decrees against him in favor of the distributees. The judgments might have been recovered by Jonathan Abercrombie without styling himself administrator, which was merely *descriptio personae. Rhodes* v. *Casey,* 20 *S. C.,* 491 ; *Robinson* v. *Robinson, Ibid.,* 573. Being the property of Jonathan Abercrombie they were not, in the usual sense, assets of the estate and disposable as such. Susan Abercrombie having a judgment against the administrator, may have an equity to ask that, as the property of her debtor they should be enforced and applied to her judgment.

But the distributees, who also have judgments against Jonathan Abercrombie, claim that they have a higher equity to have those judgments of Jonathan applied in payment of their decrees in the probate office against him. We think that purchases at an administrator's sale by a distributee of the estate are generally made in the faith that they are in part payment of the share of

such distributee. That is the natural course and is certainly the practice. Where the distributee himself purchases and the judgment for the purchases goes directly against him, his equity to have the decree for his share credited with the purchases is unanswerable; for in such case it would simply be the setting off of judgments between the same parties. When, however, the wife happens to be the distributee, and the husband making the purchases is sued to judgment, it seems to us that it is substantially the same thing. The husband in making the purchases acts also for his wife, and in the full confidence that they will be credited on the wife's share; when the wife so directs and gives up her individual and separate claim, as in this case, we think there is a high equity that the judgment for the purchases against the husband or his sureties should be set off, as payment in fact, against the decree in favor of the wife for her share. See *Falconer* v. *Powe, Bail. Eq.*, 158, where Chancellor Harper said: "In this court (equity), we look to the parties really interested. The complainants are the parties to whom the proceeds of the land belong; and the advances made by the defendant were for their benefit. It is, therefore, a clear case of mutual demands existing in equity, between the parties to the suit, and they are to be adjusted in the same way as in other cases of discount," &c.

We have had some hesitation as to setting off any part of the share of Mary Armstrong on the judgment against Henry P. Johnson to which John Armstrong, her husband, was surety. We suppose that judgment was for the purchases of Henry P. Johnson, and according to what we have already said it should be set off *pro tanto* against the decree of Clarinda Johnson, the wife of the said Henry P. Johnson. It seems that the assignment of Mary Armstrong does not in express terms embrace that judgment. But in her answer she prays that her share may be set off "against the judgments that the representatives of Jonathan Abercrombie hold against John Hellams and John Armstrong;" and as it may enure to the benefit of Clarinda Johnson in relieving her husband, the decree of the Circuit Judge as to the credits or discounts is left unchanged.

In the view expressed, that Susan Abercrombie as judgment creditor, has no right to disturb the settlement in the ordinary's

office by making the other distributees refund and contribute for the purpose of paying her debt, so much of the decree as directed a reference for that purpose was unnecessary. But as there was no exception to the decree in that particular, we have no right to make a ruling upon the subject. If the plaintiff as creditor of the ancestor had the right to make the other distributees pay back what they had received in that settlement, the principle of course would include herself as distributee. But we do not think that she has that right as to any of the distributees.

With this explanation, the judgment of this court is that the judgment of the Circuit Court be affirmed.